IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

| | |
|---|---|
| **BRIAN AND SUSAN FERNAAYS** ) | |
| ) | |
| and ) | |
| ) | |
| **OTIS BROCK,** ) | |
| ) | |
| and ) | |
| ) | |
| **Real property known as** ) | |
| **Tax Parcel Nos.: 34H-01-031 and 34H-01-032** ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Case No.: 2:21-cv-99 |
| ) | |
| **ISLE OF WIGHT COUNTY,** ) | |
| a municipal corporation, ) | |
| ) | |
| Defendant. ) | |

## COMPLAINT

Plaintiffs, Brian and Susan Fernaays, and Otis Brock, by counsel, move this Court to declare the Defendant's physical entry and use of Plaintiffs' property as a public water retention and drainage easement a taking and damaging pursuant to the federal and state constitutions.

### Nature of Action and Jurisdiction

1. Virginia recognizes inverse condemnation as a cause of action for the breach of implied contract to pay for property damaged or taken. *AGCS Marine Insurance Co. v. Arlington County*, 293 Va. 469, 478 (2017); *Livingston v. County of Fairfax,* 284 Va. 140, 145-46 (2010) (citing *Swift & Co. v. City of Newport News*, 105 Va. 108 (1906)); *see also Chicago, Burlington & Quincy Rail. Co. v. Chicago*, 166 U.S. 226, 235-36 (1897) (incorporating 14th Amendment

1

against states); *Tidewater R. Co. v. Shartzer*, 107 Va. 562 (1907) (interpreting 1902 amendment of Constitution of Virginia to require just compensation for public uses that damage property).

2.  The Supreme Court of the United States recognizes a landowner's right to institute an inverse condemnation proceeding when the government takes land without instituting formal condemnation proceedings. *First English Evangelical Lutheran Church v. County of Los Angeles*, 482 U.S. 304, 315 (1987) ("We have recognized that a landowner is entitled to bring an action in inverse condemnation as a result of '"the self-executing character of the constitutional provision with respect to compensation . . . ." (internal quotation marks omitted)).

3.  Property interests are vindicated, not created, by the Fourteenth Amendment. *Bannum, Inc. v. Town of Ashland*, 922 F.2d 197, 200 (4th Cir. 1990) (holding a well-founded expectancy not relying on an "underlying ordinance, rule or procedure" for disposition did not rise to a property interest). Rather, the interests to property are created by "existing rules or understandings that stem from an independent source such as state law . . . that secure[s] certain benefits and . . . support[s] claims of entitlement to those benefits." *Board of Regents of State Colleges. v. Roth*, 408 U.S. 564, 571-72 (1972) (holding due process protects property interests "well beyond actual ownership of real estate, chattels, or money.").

4.  The diverse characterization of types of rights in, or to, real property is analogized as akin to a "bundle of sticks" where each stick represents a separate property right. *United States v. Craft*, 535 U.S. 274, 278 (2002) ("A common idiom describes property as a 'bundle of sticks' – a collection of individual rights") (citations omitted).

5.  Article I, § 11 of the Virginia Constitution is self-executing and permits a property owner to enforce his constitutional right to just compensation in common law action both "where his property is *taken* for public uses and where it is *damaged* for public uses,

irrespective of whether there be negligence in the taking or damage." *Jenkins v. County of Shenandoah*, 246 Va. 467, 470 (1993) (quoting *Heldt v. Elizabeth River Tunnel Dist.,* 196 Va. 477, 482 (1954) (emphasis in original)). *See also Kitchen v. Newport News,* 275 Va. 378, 392 (2008) ("Article I, Section 11 of the Constitution of Virginia provides that private property shall not be taken or damaged for public use without just compensation. That section 'is self-executing and permits a property owner to enforce his constitutional right to just compensation in a common law action. We have held that such an action is not a tort action; rather, it is a contract action and, therefore, is not barred by the doctrine of sovereign immunity.'"); *Burns v. Bd. of Sup'rs*, 218 Va. 625, 627 (1977) (finding sovereign waived immunity for inverse condemnation and breach of implied contract well-pled to overrule demurrer).

6. The Fifth Amendment to the United States Constitution is also self-executing. *Knick v. Township of Scott*, 139 S. Ct. 2162, 2171 (2019); *First English*, 482 U.S. at 315.

7. The implied contract requires the County to indemnify the owner to such amount "as would have been awarded if the property had been condemned under the eminent domain statute." *Kitchen*, 275 Va. at 383 (quoting *Burns,* 218 Va. at 627); *Jenkins*, 246 Va. at 470; *Livingston*, 284 Va. at 146; *see also Knick*, 139 S. Ct. at 2177 (holding takings cases are ripe at effective date of ordinance despite there being a procedural remedy to obtain compensation).

8. This case is a civil action under 42 U.S.C. § 1983 asserting a violation of the Fifth and Fourteenth Amendments to the United States Constitution, as well as under Article I, § 11 of the Virginia Constitution and Virginia Code §§ 8.01-184 and 8.01-187 in which the Plaintiffs seek just compensation for the taking and damaging of their property by the Defendant, Isle of Wight County, for public uses without just compensation in violation of the Fifth and Fourteenth Amendments to the United States Constitution and Article I, § 11 of the Constitution of Virginia.

Inverse condemnation claims to recover just compensation are based on a breach of an implied contract to pay for the private property rights taken and damages for public uses. *Livingston v. Virginia Department of Transportation*, 284 Va. 140, 160-61 (2012); *Richmeade, L.P. v. City of Richmond*, 267 Va. 598, 601 (2004) (citing the constitutional duty to provide just compensation when it takes or damages an owner's property pursuant to a public use.)

9. When a municipality violates the Takings Clause of the Fifth Amendment by taking private property without giving the owner just compensation, that property owner may immediately bring suit in federal court under 42 U.S.C. § 1983. *Knick*, 139 S.Ct. at 2177.

10. A property owner may waive his or her tort claim and sue under a theory of implied contract based on the County's failure to pay just compensation when the County has taken or damaged the owner's property for public use pursuant to Article I, § 11 of the Virginia Constitution. See, e.g., *Burns v. Bd. of Sup'rs of Fairfax Cnty.*, 218 Va. 625, 627 (1977) ("The owner whose property is taken or damaged for public use has a right to waive all other remedies and to sue upon an implied contract that he will be paid therefor such amount as would have been awarded if the property had been condemned under the eminent domain statute.").

11. The County has taken and damaged the Plaintiffs' property by using the Plaintiffs' property to provide stormwater retention and drainage and failing to maintain the public stormwater drainage system which directs stormwater from public property onto the Plaintiffs' property. The public use of the Plaintiffs' private property caused and continues to cause a physical invasion of stormwater and erosion of areas outside of the County easement. The Plaintiff's private property is damaged by erosion, unstable banks, and sediment deposits.

12. The County's operation and maintenance of a public stormwater drainage system directs stormwater onto private property to drain stormwater from the public highway system.

*See Jenkins v. County of Shenandoah*, 246 Va. 467, 470-71 (1993) (holding that where a drainage easement dedicated to the county was designed to discharge water onto private property, damages resulting from the county's failure to maintain the easement were compensable*); see also Hampton Roads Sanitation District v. McDonnell*, 234 Va. 235, 238-39 (1987) (holding that a sanitation district's discharge onto private property was a taking).

13. Even a single instance of flooding caused by the government may be sufficient to give rise to a compensable taking. *See Ark. Game & Fish Comm'n*, 568 U.S. at 38; *Livingston*, 284 Va. at 152 ("We find nothing in Article I, Section 11's text or history that limits a property owner's right to just compensation for a damaging to only multiple occurrences of flooding. Further, our case law holds that a single occurrence of flooding can support an inverse condemnation claim."). Each instance in which the County has directed stormwater from the public highway and onto the Plaintiffs' property constitutes a taking and damaging of the Plaintiffs' property. *Livingston*, 284 Va. at 152 ("*[E]ach discharge inflicted a new injury for which [the owner] had a separate cause of action*.") (emphasis in original) (quoting *Hampton Roads Sanitation Dist. v. McDonnell*, 234 Va. 235, 239 (1987)).

14. The County platted a drainage easement over portions of Plaintiffs' properties in 1989. This plat grants the public the right for stormwater discharge through Plaintiffs' properties.

15. At all times relevant, the County discharged stormwater from a public road, Deep Water Way, through the Plaintiffs' properties in a buried pipe. The pipe, and the easement, removed public stormwater from the public highway and discharged it into Brewer's Creek.

16. In 2018, the discharge outlet of the buried stormwater pipe failed for lack of rock support. The County refused to make repairs claiming it does not own the stormwater easement.

17. Left unaddressed, the stormwater easement continued to cause erosion and soil loss. The erosion caused, and causes, sediment and debris to get deposited in Brewer's Creek.

18. The continuing, and ongoing, pipe collapse creates a widening hole 10-12 feet deep and more than 20 feet wide on the Plaintiffs' private properties. The pipe collapse will continue to grow in length towards the public road as the County refuses to make maintenance or repair. The stormwater, now in an open ditch, erodes the stabilizing soil from private property outside the easement and continues to cause a buildup of sediment in Brewers Creek.

19. At all times relevant, the County refused to maintain or repair the easement.

20. The County uses, operates, and maintains a stormwater system in a manner that directs stormwater onto the Plaintiffs' properties damaging the property and property values.

21. This Court's jurisdiction is proper under 42 U.S.C. § 1983 and 28 U.S.C. § 1331 as the action is brought under the Constitution of the United States. *Knick*, 139 S. Ct. at 2177.

22. Venue is proper as the real property at issue is located in Isle of Wight County which is within the jurisdiction of the Norfolk Division of the Eastern District of Virginia.

## **PARTIES**

23. Brian and Susan Fernaays are citizens and residents of Isle of Wight County. The Fernaays own property identified by Isle of Wight County, Virginia as lot 31 of the Brewers Creek Subdivision and Tax Map No.: 34H-01-031 and 207 Deep Water Way.

24. Otis Brock is a citizen and resident of Isle of Wight County. Mr. Brock owns private property identified by Isle of Wight County, Virginia as lot 32 of the Brewers Creek Subdivision and Tax Map No.: 34H-01-032 and 205 Deep Water Way.

25. The County is a municipal corporation operating in Isle of Wight County authorized by the Commonwealth of Virginia to use the power of eminent domain to take and damage private property for public uses such as stormwater retention and drainage.

## FACTUAL ALLEGATIONS

26. On April 3, 1989, an agent for the Board of Supervisors of Isle of Wight County executed a plat of Subdivision of Brewers Creek and recorded it in the Clerk's Office of the Isle of Wight County Circuit Court creating a fifty (50) lot residential subdivision (the "Plat").

27. The Plat reserves several easements including two (2) twenty-foot drainage easements, one (1) twenty-foot easement for future water line extension; and one (1) fifteen-foot easement for water treatment plant discharge.

28. The twenty (20) foot drainage easement, at issue in this proceeding ("the Easement"), straddles lots 31 and 32 and reads as "20' drainage easement" on the Plat.

29. The Easement contemplates draining stormwater from Deep Water Way, a public street, to a ravine which empties into Brewers Creek. Plat attached as Exhibit A.

30. The County signed, approved, and recorded the Plat to create a legal subdivision.

31. In 1994, Otis Brock purchased lot, 32, also known as 205 Deep Water Way.

32. In 1996, the County approved the re-subdivision of Lots 30 and 31 to reduce the lot size of Lot 31 to the benefit of Lot 30, with no effect on the Easement. Plat attached as Ex. B.

33. On September 15, 1998, the Fernaays purchased Lot 31 and the new home in progress of completion. Their investment exceeds $350,000. Lot 31 is 207 Deep Water Way.

34. Deep Water Way includes raised curbing, drop inlets, and other improvements designed to direct the drainage of stormwater and other precipitation out of the public road and

into the underground Easement. The Easement conveyed stormwater underground through Plaintiffs' properties to drain into a ravine which drains into Brewer's Creek.

35. In or around March 2018, the parties noticed a sink hole within the Easement.

36. In or around May 2018, Mr. Brock e-mailed the Director of Utilities of Isle of Wight County to alert the County about the issue. The County refused to repair the Easement.

37. The County refuses to acknowledge any responsibility for the Easement and refers questions to VDOT. Upon information and belief, the County believes VDOT took ownership and responsibility of certain County rights-of-way including the Easement.

38. The County did take some action – to publish about stormwater easements platted in an era before County subdivision ordinances required that a developer create a Homeowners Association entity agreeing to maintain storm water easements. Isle of Wight County, Va., *Orphaned Outfalls in Rural Virginia Localities* (Oct. 18, 2019) attached as Exhibit C.

39. The County position paper refers to the Easement as a "generic drainage easement[]" and admits that a "lack of preventive maintenance" causes "high velocity stormwater flows" to eat "away at the bedding beneath the original pipe" and leave "joints … undermined … and effectively discarded in an unstable and degrading channel." *Id.* at 3.

40. The County concedes these results leave effected property "unsellable." *Id.* at 5.

41. The County claims concern that taking responsibility for the Easement could cause the County "risk of being subject to a perpetual and expensive MS4 permit." *Id.* at 3.

42. The County finds a "lack of incentive for … the locality to fund such repairs." *Id.* at 5 (concluding that the burden to make repairs, estimated at $150,000, runs to the landowners).

43. Despite this assertion, the County did pay contractors to replace a failed storm drain outfall on Oyster Court in 2010 – a neighboring subdivision platted contemporaneous to

the subject properties using identical, and typical, plat easements draining into the same ravine. Oyster Ct Storm Drain outfall replacement proposal dated June 16, 2010, attached as Exhibit D.

44. The County used the Easement to drain stormwater since 1992 and still does now use it to drain storm water today even after allowing it to fall into disrepair.

45. The subsurface broken pipe caused a sinkhole in the Fernaays' yard and Mr. Brock's yard. The easement, which once included a subsurface pipe, now features an open hole.



46. The County continues to direct stormwater from the public road onto the Fernaays and Brock properties. The uncontained flow of water causes erosion of soils inside and outside of the Easement, including of private property owned by the Plaintiffs.

47. The Fernaays do not contribute any water to this flow, and Mr. Brock contributes a modest share. The water running through the pipe is accumulated drain from dozens of acres.

48. The Plaintiffs commissioned a survey of the sinkhole in 2020 which shows the sinkhole exceeds the limits of the existing Easement. The sinkhole continues to grow.



49. Each discharge of stormwater inflicts more injury upon the Plaintiffs.

50. The County continues to discharge water onto the Plaintiffs' property for water retention and drainage. The discharges continue to enter and erode the Plaintiffs' property.

51. The sinkhole is more than twenty feet wide and more than twelve feet deep.



52. The County uses the Plaintiffs' private property for a public use – public stormwater retention and open drainage – without making any payment for the property rights.

11

53. The County did not exercise power of condemnation to acquire these rights.

54. The Fernaays solicited County staff for assistance and the County asked for a lawsuit. See Exhibit C at 6. The County refused to help the Fernaays mitigate their damage despite the ongoing, and increasing, damage caused by the County's public use.

55. The County's operation and maintenance of its easement for stormwater drainage system now exceeds the bounds of the platted Easement designed to contain underground stormwater discharge. The County now uses the Fernaays' and Brock properties as new, and variable width, easements as well as for stormwater retention and sand fill pit in Brewers Creek.

56. The County's expansion of its Easement, without legal title, causes negative effects on Mr. Brock's and the Fernaays' ability to utilize, enjoy, or convey their property. The conditions also impair the property value and create risks and liabilities for the Fernaays.

57. The County did not exercise its formal power of eminent domain to acquire the right to direct or retain stormwater drainage outside of its original easement.

58. The County disclaims any interest in and to the Easement, including its original easement, for the purpose of providing stormwater drainage for the public right-of-way, yet the County continues to use the Property for such use and purpose.

59. The County admits it is "intentionally avoiding any semblance of drainage system ownership to remain unpermitted." Ex. C at 4. The County insists that this Court hold it liable before it exercises its fiduciary duty to maintain the Easement it accepted by plat and by use for almost thirty years. *Id.* at 6. The County admits it lacks political courage to act and plans to use any judgment to justify raising taxes to cover its failure to employ basic preventive maintenance and mitigate damage. *Id.* ("if the courts direct localities to take on this endeavor, it would

provide definitive direction and justify the order of magnitude increase to the stormwater utility fee or tax rate that would be required to cover the expense of adopting these orphaned outfalls.").

## COUNT ONE (federal inverse condemnation)

60. The Plaintiffs incorporate the allegations of Paragraphs 1 through 59 as if restated fully herein.

61. The recordation of the subdivider's plat showing a ten-foot drainage easement on Plaintiffs' respective property constitutes a common law offer of dedication of the easement by the subdivider. *Ocean Island Inn, Inc. v. City of Virginia Beach*, 216 Va. 474, 477 (1975).

62. The County's execution and recordation of the plat is unequivocal acceptance of the dedication required for dedication by plat. *See* Va. Code § 15.1-478 (1978) (superseded in the Code by § 15.2-2265); *see also Ocean Island*, 216 Va. at 479 (holding acceptance of part constitutes acceptance of the whole comprehensive scheme of public user reflected in the plat).

63. The County has further shown its acceptance of the offer of dedication by using it for public stormwater drainage. *See Dykes v. Friends of the C.C.C. Rd.*, 283 Va. 306, 315 (2012) ("When the dedication is implied from the long and continuous use by the public for the prescriptive period of twenty years, and there has been acceptance by competent authority[,] title to a right-of-way . . . may be obtained by prescription." (quoting *Board of Supervisors of Tazewell County v. Norfolk and W. Ry Co.*, 119 Va. 763, 773 (1916)); *Lawrence v. Nat'l Fruit Prod. Co.*, 43 Va. Cir. 516, 522 (1997) ("when a way has been regularly or periodically worked by road officials as a public road and used by the public as such continuously for a period of twenty years, proof of these facts shall be conclusive evidence that the same is a public road").

64. An inverse condemnation claim has four elements: (1) private property interest, (2) that interest is taken or damaged by a government entity with condemnation authority, (3) the

taking or damaging was for public use, and (4) the government failed to pay just compensation. *Kitchen*, 275 Va. at 386; *Close v. City of Norfolk*, 82 Va. Cir. 636, 640 (Norfolk 2009).

65. Isle of Wight County has condemnation authority. *See* Va. Code § 15.2-1901.1.

66. The County caused a physical entry of public water onto private property.

67. The County continues to cause physical erosion of private property owned by the Plaintiffs by its physical entry and retention of public water on the same private property.

68. The physical entry takes private property rights and damages the value of other private property rights owned by Mr. & Mrs. Fernaays and Mr. Brock.

69. The County's actions deprive the Plaintiffs of private property and the right to exclude all others from their properties, repeatedly held to be the most fundamental or property rights. *Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 433 (1982); *Kaiser Aetna v. United States*, 444 U.S. 164, 176 (1979). The County damages the Plaintiffs' right to use and enjoy their properties. The County damages the value of Plaintiffs' properties. *See Shartzer*, 107 Va. at 571 ("Where private property has been simply damaged by a public improvement, but no part thereof has been taken, the measure of damages is the diminution in the value of the property by reason of the improvement -- difference between the fair market value of the property immediately before and after the construction of the public improvement.").

70. Sewer and stormwater facilities are public uses. Va. Code § 1.219.1.

71. A locality has a common law duty to provide stormwater and sewer services, and to provide services to keep streets safe and unencumbered. *See Mumpower v. Housing Authority of Bristol*, 176 Va. 426, 453 (1940) (discussing "The duty of a municipal corporation to see that its streets and sidewalks are in a safe condition; and that its sewers and drains are kept in good order, and that its other like municipal obligations are cared for . . . ."); *Norfolk v. Hall*, 175 Va.

545, 552 (1940) ("It has long been well settled in this state that it is the duty of a city to keep and maintain its streets in repair and in a safe condition for travel, free from defects and obstructions."); *Richmond v. Cheatwood*, 130 Va. 76, 94 (1921) (accepting jury instruction stating that city is bound to use "all reasonable care, skill and diligence to provide such reasonable and proper means and facilities as would be reasonably necessary to carry off and discharge. . . the waters which might reasonably be anticipated . . . to accumulate within said area . . ."); *Stansbury v. Richmond*, 116 Va. 205, 208 (1914) ("The duty of a municipal corporation to see that its streets and sidewalks are in safe condition, and that its sewers and drains are kept in good order, and that its other like municipal obligations are cared for, . . . and the law holds the municipality responsible for an injury resulting from the negligent discharge of such duty, or the negligent omission to discharge it . . . ."); *Wright v. Richmond*, 146 Va. 835, 839 (1926) (discussing the nature of duties of municipal authorities "in adopting a general plan of drainage, and determining when and where sewers shall be built, of what size and at what level"); *Artis v. City of Alexandria*, 11 Va. Cir. 110 (Alexandria 1987) (discussing how the city's drainage duties are governmental in nature). The municipality's duty to maintain does not hang on the actions of the owner of the servient estate. *See Richmond v. Gallego Mills Co.*, 102 Va. 165, 176-77 (1903) ("It is the duty of a city, from the time it acquires a sewer, to maintain it in a reasonably proper condition, without regard to what may have been the attitude of a former owner of the land through which it passes with respect to it.").

72. The County violated the implied contract to pay compensation for the property taken and damaged, as the County made no payment to the Plaintiffs at all.

73. Under these circumstances, the Court should impanel a jury to decide that the County has taken a variable-width drainage easement beyond the scope of the dedicated

15

Easement on Plaintiffs' properties without just compensation and damaged property not taken. *See City of Monterey v. Del Monte Dunes*, 526 U.S. 687, 722 ("As is often true in § 1983 actions, the disputed questions were whether the government had denied a constitutional right in acting outside the bounds of its authority, and, if so, the extent of any resulting damages. These were questions for the jury."); *Livingston*, 284 Va. at 157 ("But it is for a jury — not us — to determine the cause of the damage to the Plaintiffs' homes."); *Heldt*, 196 Va. at 483-84 (discussing the jury's responsibility to determine liability).

74. This Court should impanel a jury to determine just compensation, and the Plaintiffs should be awarded just compensation pursuant to 42 U.S.C. § 1983.

## COUNT II (state inverse condemnation)

75. The Plaintiffs incorporate the allegations of Paragraphs 1 through 74 as if restated fully herein.

76. For the reasons stated in Count I, the County took and damaged Plaintiffs' property without providing just compensation pursuant to Article I, § XI of the Virginia Constitution and Va. Code § 8.01-187. In addition to requiring just compensation for the taking of property, the Virginia constitution also provides for just compensation when property is damaged for a public use. Va. Const. Art. I, § XI ("No private property shall be damaged or taken for public use without just compensation to the owner thereof.").

77. The Code of Virginia lists sewers and stormwater facilities as public uses for which a municipality may acquire land. Va. Code §§ 1.219.1, 15.2-1800.

78. Damage caused to private property as the result of a municipality's failure to maintain a dedicated drainage easement is recoverable in an inverse condemnation proceeding. *See Jenkins v. County of Shenandoah*, 246 Va. 467 (1993).

79. In pursuit of the public use of providing drainage from a state highway, the County has caused significant damages to Plaintiffs' properties in the form of erosion, subsidence, structural damages to private property, and sand deposit filling of Brewer's Creek impairing Plaintiffs' riparian property rights.

## **PRAYER FOR RELIEF**

The Plaintiffs, Brian and Susan Fernaays, and Otis Brock, by counsel, pray that this Court enter an Order, pursuant to 42 U.S.C. § 1983 and Virginia Code § 8.01-187: (1) declaring that the County took and damaged private property rights without payment of just compensation; (2) that a jury be impaneled to determine and award just compensation pursuant to 42 U.S.C. § 1983 and Va. Code § 8.01-187; (3) that reasonable legal and expert fees and costs be awarded to Plaintiffs pursuant to 42 U.S.C. § 1988 and Va. Code § 25.1-420, plus an award of pre-judgment and post-judgment interest; and (4) any other relief as necessary to obtain the interests of justice.

**BRIAN AND SUSAN FERNAAYS**
**OTIS BROCK**

By:_____
Counsel
