**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
Norfolk Division

BRIAN AND SUSAN FERNAAYS, ET AL.,

Plaintiffs,

v. Case No.: 2:21-cv-99

ISLE OF WIGHT COUNTY,

Defendant.

# BRIEF IN SUPPORT OF DEFENDANT'S MOTION TO EXCLUDE THE TESTIMONY OF PLAINTIFFS' EXPERTS PURSUANT TO FED. R. EVID. 702

The Defendant, Isle of Wight County, by counsel, submits this Brief in accordance with E.D. Va. Local Rule 7 in support of its Motion to Exclude the Testimony of Plaintiffs' Experts Pursuant to Fed. R. Evid. 702.

## INTRODUCTION

The Plaintiffs, Otis Brock ("Brock") and Brian and Susan Fernaays (the "Fernaays"), disclosed their experts on October 7, 2021. A copy of the disclosure is attached as **Exhibit A** [hereinafter cited as Exp. Disclosure]. The disclosure included an executive summary written by John T. Claud, III, a one-page drawing from John Ferguson, a list of what appears to be information from land records from Patricia Raper, a short letter written by Nanette Criddle, and two appraisal reports prepared by Dennis Gruelle. The report from Mr. Claud provides an engineering opinion regarding the cause of the failure of the drainage system at the site and an opinion regarding the steps necessary to repair that failure. However, the report does not provide the facts or data that Mr. Claud considered in forming his opinion or explain the methodology he employed in arriving at his opinion. The drawing from Mr. Ferguson and the list from Ms. Raper provide some information but do not contain expert opinions, facts or data reviewed in forming those opinions,

or an explanation of the methodology used to arrive at those opinions. The letter written by Ms. Criddle sets forth nothing except her conclusory, unsupported speculation about the effect of the sinkhole on the marketability of the property. The reports written by Mr. Gruelle set forth opinions that are riddled with errors, unreliable methodology, and unsupported and unexplained assertions.

## STANDARD

Rule 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. Under that rule, district courts have a "gatekeeping responsibility to 'ensur[e] that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand.'" *Nease v. Ford Motor Co.*, 848 F.3d 219, 229 (4th Cir. 2017) (quoting *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 597 (1993)) (alteration in original).

"With respect to reliability, the district court must ensure that the proffered expert opinion is 'based on scientific, technical, or other specialized knowledge and not on belief or speculation, and inferences must be derived using scientific or other valid methods.'" *Id.* (quoting *Oglesby v. Gen. Motors Corp.*, 190 F.3d 244, 250 (4th Cir. 1999)). The inquiry focuses on the principles and methodology used by the expert, not the conclusions that he or she reached. *Westberry v. Gislaved Gummi AB*, 178 F.3d 257, 261 (4th Cir. 1999). In assessing the reliability of an expert's opinion, the court should evaluate factors including:

> (1) whether a theory or technique can be or has been tested; (2) whether it has been subjected to peer review and publication; (3) whether a technique has a high known or potential rate of error and whether there are standards controlling its operation; and (4) whether the theory or technique enjoys general acceptance within a relevant scientific community.

*Cooper v. Smith & Nephew, Inc.*, 259 F.3d 194, 199 (4th Cir. 2001). These factors are "neither definitive, nor exhaustive." *Id.* Other factors in determining whether expert testimony is sufficiently reliable to be considered by the trier of fact include: (1) Whether the expert has unjustifiably extrapolated from an accepted premise to an unfounded conclusion. *See General Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997) (noting that a trial court "may conclude that there is simply too great an analytical gap between the data and the opinion proffered"); and (2) Whether the expert "is being as careful as he would be in his regular professional work outside his paid litigation consulting." *Sheehan v. Daily Racing Form, Inc.*, 104 F.3d 940, 942 (7th Cir. 1997); *see Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999) (*Daubert* requires the trial court to assure itself that the expert "employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field").

The court's gatekeeping function applies to all expert testimony, not just testimony based in science. *Kumho Tire Co.*, 526 U.S. at 148-49. "The proponent of the testimony must establish its admissibility by a preponderance of proof." *Cooper*, 259 F.3d at 199.

## ARGUMENT

The Plaintiffs proposes to introduce expert testimony from its designated witnesses, Mr. Claud, Mr. Ferguson, Ms. Raper, Ms. Criddle, and Mr. Gruelle, that does not satisfy the requirements of Rule 702 or *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 597

(1993) and its progeny. Plaintiffs have the burden of establishing the admissibility of such testimony and have failed to meet their burden. Therefore, the opinions and testimony of Plaintiffs experts should be excluded.

**I. John T. Claud, III**

Mr. Claud's report consists of a four-page document that is entitled "Cause and Effect of Failure to Maintain Drainage Easement in Isle of Wight, VA." Exp. Disclosure Ex. A. The report provides a general description of the drainage infrastructure at issue and the mechanics of a typical drainage system failure. Exp. Disclosure Ex. A, at 1-3. Mr. Claud next offers a description of the sinkhole on the property before opining that there "is an active and ongoing dangerous area around the holes." Exp. Disclosure Ex. A, at 3-4. However, he provides no basis for that conclusion. He then opines that "remediation must include bank stabilization and an individual dredging plan to remove sediment from Brewer's Creek." Exp. Disclosure Ex. A, at 4. He later discusses ways to repair the eroded area before stating that the eroded material "has been deposited in the ravine and washed down to Brewer's Creek" and opining that the material "impedes the creek from draining" and "is also reducing navigability of Brewer's Creek." *Id.*

Notably, nowhere in his report does Mr. Claud describe the facts, documents, or data that he considered when forming his opinion or otherwise describe the methodology he employed. With regard to the cause of the failure, he simply posits that the flared end section of outfalls like this often fail first without stating that such a mechanism of failure occurred here. He does not provide any indication that he actually observed the condition in the field, conducted any sort of sampling or other data gathering on the site, or even verified that the flared end section had been

displaced. Similarly, his opinions about the effect of the failure on Brewer's Creek and the requirements of repair are conclusory and unsupported. Mr. Claud does not provide any indication that he conducted any sort of measurements of the depth of the creek or sampling of the sediment to establish that any of the material had actually washed out of the ravine and into Brewer's Creek. Mr. Claud also does not provide any indication of the basis, if any, that supports his conclusion that the material is reducing the navigability of Brewer's Creek and must be removed. "[I]t is still a requirement that the expert opinion evidence be connected to existing data by something more than the 'it is so because I say it is so' of the expert." *Holesapple v. Barrett*, 5 Fed. App'x 177, 180 (4th Cir. 2001) (unpublished opinion); *Cooper*, 259 F.3d at 203 (noting that the Supreme Court has repeatedly held that a district court is not required to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert); *ePlus, Inc. v. Lawson Software, Inc.*, 764 F. Supp. 2d 807, 813 (E.D. Va. 2011) (noting that the prohibition on *ipse dixit* testimony by an expert forbids an unproven assertion resting on the bare authority of the expert). Here, Mr. Claud's opinion about the cause of the drainage failure, its effect on Brewer's Creek, and the steps necessary to remediate it are bare assertions that rest merely on his authority. They are nothing more than *ipse dixit* testimony and, as such, should be excluded.

## II. John Ferguson

Mr. Ferguson's report, such as it is, consists of a single page drawing. Exp. Disclosure Ex. B. There is no narrative at all, and it fails to set forth any sort of expert opinion, the reasons or basis for that opinion, or the facts or data reviewed in forming the opinion. It is therefore impossible to determine whether Mr. Ferguson's opinions, if any, are supported by adequate facts

or data or are the result of a reliable application of an accepted methodology. The proponents of Mr. Ferguson's testimony have failed to establish that the testimony rests on a reliable foundation, and it must be excluded. *See, e.g.*, *Norfolk & Portsmouth Belt Line R.R. Co. v. M/V Marlin*, No. 2:08cv134, 2009 U.S. Dist. LEXIS 104327, at *21 (E.D. Va. Oct. 9, 2009) (noting that a proponent has the burden of establishing the admissibility of an expert's opinion and finding that the proponent had failed to carry that burden on particular issues).

## III. Patricia Raper

Ms. Raper's report consists of a list of what appears to be information from land records for several properties. The report does not contain any expert opinion. *See Beres v. United States*, 143 Fed. Cl. 27, 67 (Cl. Ct. 2019) (striking a declaration describing transactions in a property's chain of title because it did not contain information that would be helpful to the court in rendering its opinion). There is no indication as to whether the testimony is based on sufficient facts or data. There is no description of the principles and methods used to be able to determine if the testimony is the product of reliable principles and methods, and there is no description to indicate the witness in any way reliably applied the principles and methods to the facts of the case. Ms. Raper's testimony should, therefore, be excluded.

## IV. Nanette Criddle

Ms. Criddle's report consists of a one-page letter. Exp. Disclosure Ex. D. Ms. Criddle opines that a licensed realtor would be required by law to disclose the existence of the sinkhole on the subject property. *Id.* Then, Ms. Criddle states that the easement, which now features a sinkhole, impairs the marketability and "salability" of the properties. *Id.* She also appears to opine

that eroded material "washed into the boat slip on the property owned by the Fernaays which you report affects navigability without dredging." *Id.*[1]

First, Ms. Criddle proposes to improperly testify regarding the legal disclosure requirements applicable to realtors. Experts are not permitted to testify regarding conclusions of law. *Advanced Training Grp. Worldwide, Inc. v. ProActive Techs, Inc.*, No. 19-cv-505, 2020 U.S. Dist. LEXIS 141855, at *23 (E.D. Va. Aug. 7, 2020); *see United States v. Offill*, 666 F.3d 168, 175 (4th Cir. 2011) (noting the general rule that experts are not permitted to testify regarding legal conclusions). Ms. Criddle's conclusion that Virginia state statutes would require a realtor to disclose the existence of the sinkhole improperly states a legal conclusion, is not helpful to the jury, and should be excluded.

More fundamentally, like the previously mentioned witnesses, Ms. Criddle does not provide any basis for her opinions. She does not provide any indication that she spoke to any potential buyers about the property or conducted any sort of market study to determine the impact of the drainage failure on the property. In other words, it does not identify the facts and data upon which her opinions are based or the principles and methods used, or how they were applied. *See Mt. Valley Pipeline, LLC v. 9.89 Acres of Land*, No. 7:19-cv-145, 2021 U.S. Dist. LEXIS 184435, at *14-15 (W.D. Va. Sept. 27, 2021) (excluding the opinion of a realtor who opined that lenders withhold loans from properties along pipeline corridors and some buyers decline to purchase such properties because the realtor failed to identify the facts or data upon which her opinion was based);

---

[1] There is no indication why a real estate agent would ever be the appropriate expert to try to testify about this.

*Mt. Valley Pipeline, LLC v. 1.81 Acres of Land*, No. 7:19-cv-00151, 2019 U.S. Dist. LEXIS 141711, at *17-18 (W.D. Va. Aug. 21, 2019) (excluding the opinion of a real estate broker who based her opinion about marketability on conversations with various market participants because such "anecdotal conversations relating to various fears or perceptions, without foundation, are entirely insufficient as a basis for expert testimony"); *see also Copeland v. Bieber*, No. 2:13cv246, 2016 U.S. Dist. LEXIS 178817, at *18 (E.D. Va. Sept. 8, 2016) (excluding the testimony of an expert whose report contained "conclusory statements without adequate explanation or support"). Ms. Criddle's testimony should, therefore, be excluded.

**V. Dennis Gruelle, MAI, SRA**

Plaintiffs have provided two reports from Dennis Gruelle, one for each property. Exp. Disclosure Exs. E, F. Both reports follow the same basic pattern: Gruelle first determines the "before" value of each property using the sales comparison approach. Exp. Disclosure Ex. E, at 10-16; Exp. Disclosure Ex. F, at 10-18. He then discusses the cost of curing the failure, relying on the undisclosed opinions of individuals who have not been identified as experts in doing so. Exp. Disclosure Ex. E, at 17; Exp. Disclosure Ex. F, at 18-19. Next, he opines about the market perceptions of the sinkhole without any indication of how he arrived at those perceptions before concluding, without any apparent justification, that the sinkhole damaged the properties by 15%, in the case of the property owned by Brock, and 30%, in the case of the Fernaays' property. Exp. Disclosure Ex. E, at 17-19; Exp. Disclosure Ex. F, at 19-20. Finally, he applies that adjustment to the same comparable sales that he used in his "before valuation" to arrive at his just compensation figure. Exp. Disclosure Ex. E, at 20; Exp. Disclosure Ex. F, at 21-22. In the Brock report, Gruelle

allegedly "checked" his conclusion against two other comparable properties, but neither of those comparable properties is reported to have a condition similar to that on the subject property. Exp. Disclosure Ex. E, at 20-21.

Gruelle's opinion is fatally flawed in a number of respects. First, Gruelle's opinion about the cost to cure the condition does not rest on a reliable foundation. Gruelle's estimate of the cost to repair the sinkhole is reportedly derived from the cost estimated by the County to repair a similar condition elsewhere and a bid from Lewis Construction to repair the condition on the subject properties. No report from anyone affiliated with Lewis Construction or the firm who prepared the estimate for the other condition was disclosed by the Plaintiffs. Similarly, Gruelle alleges he relies on two other named individuals, David Stokes and Nathan Iseman, to conclude that the repairs to the Fernaays property would need to include dredging around their dock to increase the water depth for recreational boating access and the cost of that dredging. No report was provided for Mr. Stokes nor Mr. Iseman and neither is designated to testify in this matter. Gruelle is, in effect, reporting the expert opinions of non-testifying general and marine contractors regarding the necessity of dredging and the cost of repairing the condition. That is not permitted. *Tokio Marine & Fire Ins. Co. v. Norfolk & W. Ry.*, No. 98-1050, 1999 U.S. App. LEXIS 476, at *11-12 (4th Cir. Jan 14. 1999) (unpublished opinion) ("[O]ne expert may not give the opinion of another expert who does not testify.") (citing *Weaver v. Phoenix-Home Life Mut. Ins. Co.*, 990 F.2d 154, 159 (4th Cir. 1993); *6816.5 Acres of Land v. United States*, 411 F.2d 834, 839-40 (10th Cir. 1969)); *United States v. Cuong*, 18 F.3d 1132, 1143-44 (4th Cir. 1994) ("We also find it was error to allow Dr. MacIntosh to bolster his opinion evidence by testifying that his conclusions as to Tran's actions

were 'essentially the same' as those of a Dr. Stevenson, who did not testify and whose report was not introduced into evidence."); *Mt. Valley Pipeline v. 1.40 Acres*, No. 7:19-cv-160, 2021 U.S. Dist. LEXIS 61654, at *12, 15-16 (W.D. Va. March 31, 2021) ("Courts including the Fourth Circuit have held that Rule 703 does not 'extend so far as to allow an expert to testify about the conclusions of other experts.'" (quoting *Mike's Train House, Inc. v. Lionel, L.L.C.*, 472 F.3d 398, 409 (6th Cir. 2006))). Accordingly, his opinion regarding the necessity of dredging and the costs of repair are unreliable and must be excluded.

In addition, Gruelle's opinion regarding the cost to cure suffers from other defects that render it unreliable. Gruelle addresses the cost to cure the entire sinkhole in each of his two reports. This is an impermissible double count. One landowner would no longer face the expense of repairing the condition if the other shouldered the entire cost. This alone renders his opinion unreliable. *See Acosta v. Vinoskey*, 310 F. Supp. 2d 662, 668 (W.D. Va. 2018) (excluding an expert's opinion about damages because the unreliable method he employed in calculating them resulted in a double count of damages in a certain category). What's more, in his Fernaays report, Gruelle appears to commit a mathematical error in adding up his alleged damage figures, or he adds in a completely unidentified and unexplained additional amount. He asserts that the cost for bank stabilization is $75,000 and the cost for dredging is $30,000. Exp. Disclosure Ex. F, at 19. These amounts add up to $105,000. Gruelle then claims, without explanation, that the "hard costs to adjust the property to its before condition hover around $150,000." *Id.* Whatever methodology Gruelle used is not a reliable one as $75,000 plus $30,000 does not equal $150,000.

Gruelle next discusses the impact of the sinkhole on the marketability of the property. In sum, Gruelle concludes that each property owner cannot sell their property except for a deep discount. The basis for this conclusion is not disclosed—he does not claim, for example, that he conducted a market study or even that he consulted with potential buyers who expressed an unwillingness to purchase the property with a sinkhole on it except for a steep discount. His opinion on these matters should therefore be excluded. *See Mt. Valley Pipeline, LLC v. 4.31 Acres*, No. 7:19-cv-679, 2021 U.S. Dist. LEXIS 61662, at *21-22 (W.D. Va. March 31, 2021) (excluding Gruelle's opinion that buyers would not purchase a property with a natural gas pipeline on it because it was based on the insufficient basis of anecdotal conversations of various fears or perceptions and because Gruelle did not provide a link to diminution of market value because of it); *Mt. Valley Pipeline, LLC v. 1.40 Acres*, No. 7:19-cv-160, 2021 U.S. Dist. LEXIS 61654, at *10 (W.D. Va. March 31, 2021) (excluding Gruelle's opinion about the marketability of property with a natural gas pipeline on it that was based on conversations with brokers because the proponents "cannot prove a link to any diminution in market value"); *Mt. Valley Pipeline, LLC v. 1.85 Acres of Land*, No. 7:19-cv-00147, 2020 U.S. Dist. LEXIS 38370, at *16-17 (W.D. Va. March 5, 2020) (excluding Gruelle's opinion that was based on conversations with brokers because "anecdotal conversations relating to various fears or perceptions, without foundation, are entirely insufficient as a basis for expert testimony."); *see also Trans-Radial Solutions, LLC v. Burlington Med., LLC*, No. 2:18-ev-656, 2020 U.S. Dist. LEXIS 130951, at *10 (E.D. Va. July 23, 2020) ("Plaintiff may not rely on Dr. Gall's resume, however impressive it may be, as license to offer his

opinion on behalf of the entire cath lab market without any facts or data from that market in support of his opinion.").

Gruelle next purports to use the sales comparison approach to determine the impact of the sinkhole on the market value of the property. There are three problems with his approach, any one of which on its own would be sufficient to render the opinion unreliable. First, Gruelle applies a percentage adjustment to the "amenities" category of each sale in the after-condition analysis—15% in the case of the Brock property and 30% in the case of the Fernaays property—that is not based on anything. Gruelle does not claim that the percentage is based on the cost to cure or is otherwise based on market data. In other words, it appears to be invented out of whole cloth. That is impermissible. *See Metamining, Inc. v. Barnette*, No. 2:12CV00024, 2013 U.S. Dist. LEXIS 89446, at *33 (W.D. Va. June 26, 2013) (excluding an expert opinion because the expert "cites no formula by which he derived the lease premiums, permit values or discount factors that were essential to his conclusions"); *see also Mt. Valley Pipeline, LLC v. 4.72 Acres of Land*, No. 7:18-cv-00647, 2020 U.S. Dist. LEXIS 94830, at *4-5 (W.D. Va. June 1, 2020) (excluding an appraiser's opinion about damages resulting from loss of marketability during project construction because, among other things, the appraiser "did not offer any facts or data to support his opinion"); *Mt. Valley Pipeline, LLC v. 10.67 Acres of Land*, No. 7:18-cv-00609, 2019 U.S. Dist. LEXIS 195443, at *15 (W.D. Va. Nov. 12, 2019) (excluding the opinion of an appraiser because, among other things, the appraiser applied an adjustment to a comparable property that was "entirely unsubstantiated" and was the appraiser's "own creation, not market-based"); *Atl. Coast Pipeline v. 0.07 Acre*, 396 F. Supp. 3d 628, (W.D. Va. 2019) (excluding an appraiser's estimate of the cost

of a well and septic system because the appraiser "provides no data regarding how the figure of $100,000 was reached, such as prices of subcomponents and associated labor or equipment costs.").

Second, Gruelle's computation of damages violates a core principle of real estate appraisal: that, when a condition that damages land is curable, the damages cannot exceed the cost to cure. 4A Nichols on Eminent Domain § 14.02[3][d] (Matthew Bender, 3rd ed.) ("Thus, in the case of a partial taking, the landowner is entitled to severance damages equal to the *lesser* of the cost to cure or the diminution in market value to the remainder."); *see, e.g.*, *Hardy v. United States*, 141 Fed. Cl. 1, 40 (Cl. Ct. 2018) (finding that a claimant was entitled to the lesser of the cost to cure or the damages that result from the taking); *State by Comm'r of Transp. v. Weiswasser*, 149 N.J. 320, 330-31, 693 A.2d 864, 869 (1996) ("The doctrine of mitigation of damages has been applied to condemnation actions, and, in that context, is sometimes referred to as the 'cost of cure' or the doctrine of avoidable costs."); *Bradshaw v. State Highway Comm'r*, 210 Va. 66, 68, 168 S.E.2d 129, 130 (1969) ("The landowners concede that it is ordinarily the duty of owners of property taken by eminent domain proceedings to minimize their damages to the residue so far as they reasonably can."). Here, Gruelle's report alleges the cost to cure the sinkhole is $75,000, and the cost of dredging around the Fernaays' dock is alleged to be $30,000. Assuming that the cost of fixing the sinkhole is shared equally by both parties, since it is occurring on both parcels, the cost to cure for Brock would be $37,500, and the cost to cure for the Fernaays would be $67,500. Yet Gruelle assesses damages of $75,000, for the Brock property, and $190,000, for the Fernaays property. Even if Gruelle could count the whole cost of curing the sinkhole against the Fernaays,

his estimate of damage to that property would still exceed the cost to cure on that property by $85,000. Gruelle does not purport to limit the damages to the cost of cure that he determines or explain why the damages exceed that cost to cure.

Finally, and perhaps most glaringly, Mr. Gruelle's analysis assumes the very conclusion he tries to prove. Rather than use sales of comparable properties that have similar conditions to the erosion on the subject properties as market evidence of a reduction in value caused by the condition, Mr. Gruelle uses the same unaffected sales that he used to determine the before-condition value of the subject properties and applies the invented adjustment described above to essentially guess at a reduction in their value. Such an analysis is not reliable. *See Mt. Valley Pipeline, LLC v. 9.89 Acres of Land*, No. 7:19-cv-145, 2021 U.S. Dist. LEXIS 184435, at *10-12 (W.D. Va. Sept. 27, 2021) (excluding Mr. Gruelle's opinion of the property after the taking because it was based on insufficient data and unreliable due to the fact that two of the three sales he relied on did not "provide the value of a property encumbered by a pipeline easement"); *Mt. Valley Pipeline, LLC v. 4.31 Acres*, No. 7:19-cv-679, 2021 U.S. Dist. LEXIS 61662, at *18-21 (W.D. Va. March 31, 2021) (excluding Mr. Gruelle's opinion about two sales he attempted to use to determine the value of a property burdened by a pipeline easement where one was not encumbered by a pipeline easement and the other was purchased by a buyer who was unaware of the encumbrance because the "data is irrelevant and unreliable given the purpose for which he used the data"); *see also Town of Nags Head v. Richardson*, 260 N.C. App. 325, 349, 817 S.E.2d 874, 892 (2018) ("Mr. Gruelle's testimony fails the requirement of Rule 702 that '[t]he testimony [must be] the product of reliable principles and methods.'"). The two additional sales identified by

Mr. Gruelle as properties used as a "check" on his opinion in the Brock report, Exp. Disclosure Ex. E, at 20, do not provide any additional support to his opinion. Like the other sales, these sales do not suffer from erosion conditions similar to that allegedly found on the subject properties. Mr. Gruelle's opinion regarding the value of the subject properties after the sinkhole occurred is based on insufficient, irrelevant, and unreliable data and must be excluded.

## CONCLUSION

For the foregoing reasons, the Defendant, Isle of Wight County, asks that the Court exclude the opinions offered by and testimony of John T. Claud, III, John Ferguson, Patricia Raper, Nanette Criddle, and Dennis Gruelle and for such other relief as the Court deems just and proper.

Respectfully Submitted,

**ISLE OF WIGHT COUNTY**

By: /s/ Matthew R. Hull_____
David L. Arnold (VSB #34488)
D. Rossen S. Greene (VSB #74940)
Matthew R. Hull (VSB #80500)
**PENDER & COWARD, P.C.**
117 Market Street
Suffolk, Virginia 23434
(757) 502-7345 – Telephone
(757) 502-7376 – Facsimile
darnold@pendercoward.com
rgreene@pendercoward.com
mhull@pendercoward.com
*Counsel for Defendant Isle of Wight County*

## CERTIFICATE OF SERVICE

I certify that on November 2, 2021, I filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send a notification of such filing to all counsel of record, including the following:

Joseph V. Sherman, Esquire (VSB # 86099)
JOSEPH V. SHERMAN, P.C.
324 West Freemason Street
Norfolk, Virginia 23510
Telephone: (757) 350-8308
Facsimile: (757) 351-4663
joe@lawfirmJVS.com
*Counsel for Plaintiffs*

By: /s/ Matthew R. Hull__________
David L. Arnold (VSB #34488)
D. Rossen S. Greene (VSB #74940)
Matthew R. Hull (VSB #80500)
**PENDER & COWARD, P.C.**
117 Market Street
Suffolk, Virginia 23434
(757) 502-7345 – Telephone
(757) 502-7376 – Facsimile
darnold@pendercoward.com
rgreene@pendercoward.com
mhull@pendercoward.com
*Counsel for Defendant Isle of Wight County*