## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Norfolk Division

| | |
|---|---|
| **BRIAN AND SUSAN FERNAAYS,** *et al.*, )<br><br>**Plaintiffs,** )<br><br>**v.** )<br><br>**ISLE OF WIGHT COUNTY,** )<br>*a municipal corporation*, )<br><br>**Defendant.** ) | **Case No. 2:21cv99** |

## OPINION AND ORDER

Before the Court are two motions filed by Defendant Isle of Wight County ("the County").
First, the County filed a Motion to Strike Plaintiffs' Expert Witness Disclosure and Exclude Expert
Testimony Pursuant to Federal Rules of Civil Procedure 16(f), 26(a)(2)(B), and 37, and an
accompanying memorandum. ECF Nos. 19–20. Second, the County filed a Motion to Exclude
Plaintiffs' Experts Pursuant to Federal Rule of Evidence 702, and an accompanying memorandum.
ECF Nos. 21–22. Both motions seek to exclude five purported experts that Plaintiff disclosed in
their expert witness disclosures. *See* ECF Nos. 20, 22. Plaintiffs filed a single opposition in
response to both motions, ECF No. 23, and the County filed a single reply, ECF No. 29. The Court
held a hearing on the motions on March 3, 2022, at which Joseph Sherman argued on behalf of
Plaintiffs and Donald Greene argued on behalf of the County. ECF No. 53. Accordingly, the
motions are now ripe for disposition.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs, homeowners in Isle of Wight County, Virginia, brought this inverse
condemnation action claiming that the County's failure to maintain a drainage easement on their

two properties caused damage to the properties, including erosion, a sinkhole, unstable banks, and sediment deposits. ECF No. 1 at ¶¶ 11, 45. In support of their claims, Plaintiffs identified five individuals as expert witnesses: John T. Claud III, John Steve Ferguson, Patricia Raper, Nanette Criddle, and Dennis Gruelle. The Court's Rule 16(b) Scheduling Order required Plaintiffs to produce their expert witness reports on October 7, 2021. ECF No. 11, ¶ 2. In accordance with that Order, Plaintiffs produced their Rule 26(a)(2)(B) disclosures on that date. ECF No. 20, attach. 1. Following the parties' discussions about a separate matter, Plaintiffs provided a supplemental disclosure on October 15, 2021. *Id.* at 1, attach. 2. The supplemental disclosure included additional information that was required to be disclosed under Rule 26(a)(2)(B). *Id.* After an additional discussion between counsel failed to result in any further supplementation by Plaintiffs, the County filed the instant motions. ECF No. 19.

## II. **LEGAL STANDARD**

Rule 26(a)(2)(B) ("Rule 26") of the Federal Rules of Civil Procedure provides in pertinent part that a retained expert must disclose a report containing:

> (i) a complete statement of all opinions the witness will express and the basis and reasons for them; (ii) the facts or data considered by the witness in forming them; (iii) any exhibits that will be used to summarize or support them; (iv) the witness's qualifications, including a list of all publications authored in the previous 10 years; (v) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and (vi) a statement of the compensation to be paid for the study and testimony in the case.

Fed. R. Civ. P. 26(a)(2)(B). "The purpose of Rule 26(a) is to allow litigants 'to adequately prepare their cases for trial and to avoid unfair surprise.'" *Bresler v. Wilmington Tr. Co.*, 855 F.3d 178, 190 (4th Cir. 2017) (quoting *Russell v. Absolute Collection Servs., Inc.*, 763 F.3d 385, 396 (4th Cir. 2014)). If a party fails to comply with the expert witness disclosure rules as required by Rule

26(a), the party cannot "use that information or witness to supply evidence . . . at a trial, unless the failure was substantially justified or is harmless.'" *Id.* (quoting Fed. R. Civ. P. 37(c)(1)).

Rule 702 of Federal Rules of Evidence ("Rule 702") permits admission of "scientific, technical or other specialized knowledge" by a qualified expert if it will "help the trier of fact to understand the evidence or to determine a fact in issue," "the testimony is based on sufficient facts or data," "is the product of reliable principles and methods," and "the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702 ("Rule 702"); *see also United States v. Wilson*, 484 F.3d 267, 274–75 (4th Cir. 2007). The Court must ensure that an expert's opinion is based on "*knowledge* and not on belief or speculation." *Sardis v. Overhead Door Corp.*, 10 F.4th 268, 281 (4th Cir. 2021) (emphasis in original) (quoting *Oglesby v. Gen. Motors Corp.*, 190 F.3d 244, 250 (4th Cir. 1999)). Expert testimony may be admitted pursuant to Rule 702 if the testimony is both relevant and reliable, considering a number of factors including whether the theory or technique "can be (and has been tested)," whether it "has been subjected to peer review and publication," whether it has been "generally accept[ed]" in the "relevant scientific community," and "the known or potential rate of error." *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589, 593–94 (1993). The evaluation of these factors "can 'depend[] on the nature of the issue, the expert's particular expertise, and the subject of his testimony.'" *Sardis*, 10 F.4th at 281 (quoting *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150 (1999)). "Accordingly, trial courts are typically given 'broad latitude' to determine which of these factors (or some other unspecified factors) are 'reasonable measures of reliability in a particular case.'" *Id.* (citation omitted).

Although the admissibility of expert opinion is "flexible," the district court must function as a gatekeeper, permitting only expert testimony that comports with Rule 702's guidelines as

explained in *Daubert*. 509 U.S. at 594.  In doing so, the Court has an obligation to "ensure that an

expert's testimony both rests on a *reliable* foundation and is *relevant* to the task at hand." *Sardis*,

10 F.4th at 281 (emphasis in original) (quoting *Nease v. Ford Motor Co.*, 848 F.3d 219, 229 (4th

Cir. 2017)).  "Simply put, if an opinion is not relevant to a fact at issue, *Daubert* requires that it be

excluded." *Id.*  Despite the Court's "broad discretion" to determine which factors are "reasonable

measures of reliability in a particular case," the determination of an expert's reliability is not an

issue that can be delegated to a jury.  *Id.*  As recently emphasized by the Fourth Circuit, in cases

where expert testimony is challenged on relevance and/or reliability grounds, the district court's

gatekeeping function is "indispensable" and "cannot be overstated." *Id.* at 283–84.

## III. ANALYSIS

### A.

Plaintiffs identified five expert witnesses in their Rule 26(a)(2)(B) disclosures: (1) John T.

Claud, III; (2) John Steve Ferguson; (3) Patricia Raper; (4) Nanette Criddle; and (5) Dennis

Gruelle.  ECF No. 20, attach. 1 at 1–2.[1]  The County seeks to exclude all five experts based on

Plaintiffs' failure to provide complete disclosures required by Rule 26(a)(2)(B), and based on the

experts' purported failure to provide reliable and relevant opinions as required by Rule 702.  ECF

Nos. 20, 22.  Through its briefing, the County addressed the claimed deficiencies in each expert

report individually, applying the requirements of Rule 26(a)(2)(B) and Rule 702 and arguing why

each expert fell short under the rules.  In response, rather than address the merits of the County's

arguments one-by-one as the County made them, Plaintiffs took a broader approach to defend their

position.  While addressing some of the County's arguments separately, their overall defense

---

[1] The County filed Plaintiffs' Rule 26 disclosures as an exhibit to both its motions to exclude. *See* ECF No. 20, attach. 1; ECF No. 22, attach. 1.  To avoid repetition, the Court will refer only to Plaintiffs' first filed disclosure, ECF No. 20, attach. 1.

against the motions appears to be their claim that all that is required in expert disclosures is information sufficient to permit the opposing party to prepare their case for trial whether all of the requirements of Rule 26(a)(2)(B) were met or not.   ECF No. 23 at 1, 3, 5.  Plaintiffs began their brief with this assertion, which, intentionally or not, suggests that adhering to the requirements of the Federal Rules of Civil Procedure and the Federal Rules of Evidence were mere formalities. ECF No. 23 at 1.  Indeed, Plaintiffs averred that the County sought to exclude Plaintiffs' experts "by alleging an exhaustive list of technicalities," for the purpose of "further[ing] the County's gamesmanship to avoid liability . . . " *Id.*  Challenging the County's motives, Plaintiffs' alleged "The County seeks an outcome, not justice, in its motions." *Id.*  Rather than address the merits of most of the County's challenges, Plaintiff instead impugned the County's litigation approach. *See, e.g., id.* at 3 ("Litigation gamesmanship is a poor substitute for deciding cases on the merits."); at 5 ("Defendant defends this case, start to finish, with gamesmanship."); at 7 ("Defendant is well aware how to prepare its case – it just prefers to avoid trial and seeks to enlist this Court in its gamesmanship at all costs."); at 8 ("Defendant's strategy is clear – feign offense to opinions not included in the disclosures while burying its head in the sand to ignore opinions and evidence provided"); at 10 ("Defendant nitpicks every sentence in the opinion"); at 11 (" . . . the County chooses to pay its attorneys to litigate this matter into submission.  The arguments raised by the County reflect gamesmanship, not the interest of justice.").   These arguments are wholly unpersuasive, consisting as they do of unprofessional attacks on opposing counsel and what appears to be an erroneous understanding of the Federal Rules of Civil Procedure and the Federal Rules of Evidence.  As such, they do not at all persuade the Court.[2]

---

[2] Counsel is advised to refrain from such ad hominem attacks and focus on the legal and factual issues raised by the opposing side when engaged in litigation in this, or any other, Court.

Nonetheless, Plaintiffs also argued that the reports were all sufficiently reliable and relevant under Rule 702 and in no way deficient, and that any omissions in their disclosures were harmless under Rule 26(a)(2)(B).  ECF No. 23.  To the extent Plaintiff asserts these arguments, the Court will address them.  To resolve these motions, then, the Court will review each expert and their report under both Rule 26(a)(2)(B) and Rule 702.

**B.**

1. John T. Claud, III

In their Rule 26(a)(2)(B) disclosures, Plaintiffs identified John T. ("Jack") Claud, of Hoggard-Eure Associates, P.C., to testify about "drainage improvements within the drainage easement including their type, construction method, failure, and method of repair." ECF No. 20, attach.1 at 1.  Claud drafted a report titled "CAUSE AND EFFECT OF FAILURE TO MAINTAIN DRAINAGE EASEMENT IN ISLE OF WIGHT, VA." Generally, Claud opined about (1) how the outfall should have been maintained; (2) what happened when the outfall was not sufficiently maintained and how the sinkhole was created; (3) how to repair the damage, including remediation such as bank stabilization and an individual dredging plan to remove sediment from Brewer's Creek, the stream into which the stormwater drains. ECF No. 20, attach. 1 at 5–8.  He did not describe his qualifications or area of expertise.  *Id.*

Following Plaintiffs' initial Rule 26(a)(2)(B) disclosures, eight days later, Plaintiffs provided a supplemental disclosure noting that:

> Claud does not maintain a resume. His work experience includes forty years of ongoing work in the field of surveying, engineering, and construction administration including for Hoggard-Eure as the director of private development since 2014. Claud performed his report for $4,500 and will testify at a rate of $240 per hour. He is not a published author.

6

ECF No. 20, attach. 2 at 1. Plaintiffs did not disclose any prior testimony. When the Court inquired at the hearing in what subject or field were Plaintiffs proffering Claud as an expert, counsel replied "the field of surveying, engineering and construction administration." Counsel represented that Claud did not have an engineering or other formal post-high school education, but developed his expertise primarily from forty years of work experience.

The County argues that Claud's testimony should be excluded under Rule 26(a)(2)(B) because "neither his report nor the supplemental disclosure contains a statement of the witness's opinions and the basis and reasons for them," or the facts or data that he considered in forming his opinions. ECF No. 20 at 4–7. Further, the County argues that Claud's disclosure is deficient under Rule 26(a)(2)(B) because, although the supplement provided more information about Claud's qualifications and compensation, that information was not meant to correct any inaccuracies or add information that was not available at the time of the initial report. *Id.* at 4–5.

The County also argues that Claud's testimony should be excluded under Rule 702 because Claud does not describe any facts, data, documents, or other methodology he considered when forming his opinions about the cause of the drainage failure, its effect on Brewer's Creek, and the steps necessary to remediate it. *Id.* Furthermore, the County contends that Claud's report "fails to offer an opinion tailored to the specific property at issue" but constitutes merely a "general description of the mechanics of a typical drainage system failure." *Id.* at 5. Consequently, the County contends that Claud's opinions are conclusory and unsupported. ECF No. 22 at 4–5.

The gravamen of Plaintiffs' opposition is that their disclosures provided the County with all the information they need to defend the case, and nothing more was required. ECF No. 23 at 6. They contend that the engineering report was sufficient because Claud "produced an

7

engineering analysis specific to the subject property" and many of his opinions are "common sense." *Id.* at 6, 10–11. As a result, they contend his report is sufficient and his opinions are valid.

a. *Claud's report is deficient under Rule 26(a)(2)(B).*

Claud's report is deficient under Rule 26(a)(2)(B) for several reasons. First, he has not provided any information regarding his education, training or experience establishing how he is qualified to offer engineering opinions. His report is silent as to this information, and at the hearing Plaintiffs' counsel offered only that Claud has a high school education and forty years of work experience. No other information has been provided, such as specifics regarding the type of work experience Claud possessed, including the types of projects he has worked on over the years and his responsibilities in working on those projects. Second, Claud failed to identify the facts or data that he considered in forming his opinions. His report does not state whether he conducted site visits, performed studies, and/or reviewed photographs; in short, he failed to provide any information upon which the Court could determine what facts or data he considered in forming his opinions. Third, although Claud opined that "remediation must include bank stabilization and an individual dredging plan to remove sediment from Brewer's Creek," he failed to state the basis and reasons for this opinion. ECF No. 20, attach. 1 at 8. Although Plaintiffs' supplement appears to have corrected some deficiencies by providing a statement of Claud's qualifications and compensation, Plaintiffs made no effort to correct or supplement the disclosure to include information about the other shortcomings in his report—despite having ample time to do so.

b. *Claud's opinions are unreliable under Rule 702.*

As noted, the determination of an expert's reliability is not an issue that can be delegated to a jury. *Sardis*, 10 F.4th at 281. Because Claud's report failed to sufficiently state why he should be considered an expert in his field, failed to identify facts or data that he considered in forming

8

his opinions, and failed to explain the reasons and basis for at least one of his opinions, his opinions on the whole are unreliable. First, although Plaintiffs' counsel advised at the hearing that Claud was an expert in "the field of surveying, engineering and construction administration" no other information has been provided disclosing upon what basis the Court should conclude Claud has sufficient expertise to offer these types of engineering opinions; Claud offered no additional information about how his experience allows him to form his opinions and reach his conclusions. Without a sufficient proffer as to an expert's qualifications, the Court as gatekeeper cannot permit the witness to offer opinions which require scientific, technical or other specialized knowledge. *See Disney Enters., Inc. v. Kappos*, 923 F. Supp. 2d 788, 798 (E.D. Va. 2013) ("The proponent of expert testimony bears the burden of establishing the admissibility of the testimony by a preponderance of the evidence") (citing *Cooper v. Smith & Nephew, Inc.*, 259 F.3d 194, 199 (4th Cir. 2001)). While an expert may be qualified based on experience alone, "the expert must be able to explain '[1] how that experience leads to the conclusion reached, [2] why that experience is a sufficient basis for the opinion, and [3] how that experience is reliably applied to the facts.'" *SMD Software, Inc. v. EMove, Inc.*, 945 F. Supp. 2d 628, 644 (E.D.N.C. 2013) (citing Fed. R. Evid. 702 advisory committee's note (2000)). Here, the Court has no information about how Claud's experience leads to his conclusions, and why that experience is a sufficient basis for the opinion.

Second, as explained above, Claud did not identify the facts or data he used in forming his opinions. While he did attach to his report plats of the Brewer's Creek subdivision, no other facts were proffered explaining what he considered before opining on the condition of the land and the remediation necessary to correct it. The Court can speculate Claud might have conducted site visits, checked land records, taken measurements or soil samples, compared the site's condition as of the date of his report with its condition previously, searched County records to determine the

9

extent, if any, of prior maintenance of the easement, or done any number of things to permit the Court to conclude that his opinions are the product of reliable principles and methods. Fed. R. Evid. 702. However, that is merely speculation because Claud failed to identify any information upon which he relied to arrive at his opinions.

Finally, Claud opined:

> The material that has washed away from the failure area has been deposited in the ravine and washed down to Brewer's Creek. This material impedes the creek from draining and should be removed to allow water to evacuate the subdivisions served by the ravine. This material is also reducing navigability of Brewer's Creek and should be removed.

ECF No. 20, attach. 1 at 8. These statements are conclusory opinions for which Claud offered no basis or reasons. Claud does not explain how he knows any of this. Are these conclusions the results of any studies or measurements? How much has navigability been reduced because of the erosion caused by the failure to maintain the drainage easement? Would navigability have been impeded for reasons other than the effects of the drainage system erosion? Claud does not explain. Because he failed to articulate the basis and reasons for these opinions, they are unreliable and unhelpful to the jury.

2. John Steve Ferguson, L.S.

In their Rule 26(a)(2)(B) disclosures, Plaintiffs identified John Steve Ferguson, L.S., of Hoggard-Eure Associates, P.C., to testify about "surveying of the drainage easement and the rate of failure drainage improvements." ECF No. 20, attach. 1 at 1. Ferguson's "report" consists of a single-page drawing purporting to show the areas of erosion and the sinkhole with dates ranging from March 13, 2020 to August 25, 2021. *Id.* at 13. Following Plaintiffs' initial Rule 26(a)(2)(B) disclosures, Plaintiffs provided a supplemental disclosure attaching Ferguson's resume, and noted that "Ferguson supervised extensive surveying at a cost of more than $4,200 and will testify at a

10

rate of $240.00 per hour. Ferguson did not author any publications in the last ten (10) years." ECF No. 20, attach. 2 at 1–4.

The County argues that Ferguson's testimony should be excluded under Rule 26(a)(2)(B) because his supplemental disclosure did not add newly discovered information, but regardless, neither his report nor the supplemental disclosure identifies any of Ferguson's opinions, the basis and reasons for those opinions, or the facts or data he considered in forming his opinions. ECF No. 20 at 7. The County also argues that Ferguson's testimony should be excluded under Rule 702 because he fails to set forth any opinion, the reasons and basis for any opinions, or facts or data reviewed to form an opinion, and accordingly, his testimony is unreliable. ECF No. 22 at 5–6.

In their opposition, Plaintiffs identify Ferguson's drawing as a survey and claim that it is meant to show the "limits of the sinkhole on specific dates," thus demonstrating "the sinkhole growth over time." ECF No. 23 at 3, 5. They contend the drawing represents "seven (7) separate survey events, *id.* at 6, is not rebutted by the County, *id.* at 10, and is accurate and speaks for itself, *id.* at 11. Consequently, they contend the report is sufficient and Ferguson's opinions are valid.

a) *Ferguson's report is deficient under Rule 26(a)(2)(B).*

Consisting of a simple one-page drawing, Ferguson's "report" is anything but a Rule 26 report. There are no opinions asserted that can be gleaned solely from the document, nor any reasons alleged, nor any facts or data provided. The document is simply a one-page drawing provided without explanation that contains none of the disclosures required by Rule 26(a)(2)(B)(i) and (ii). Plaintiffs' effort to explain the drawing notwithstanding, it is the expert who is required to provide the information required by Rule 26(a)(2)(B)(i) and (ii) in their report, and Ferguson has not done so. Hence, the "report" is deficient under the Rule.

11

### b) *Ferguson's opinions are unreliable under Rule 702.*

While Plaintiffs purport to explain the relevance of Ferguson's drawing in their opposition, they are not the ones whose opinions must pass muster under Rule 702 and *Daubert*. *See* Fed. R. Evid. 702. Although they represent that the drawing is a survey—and perhaps it is a survey of some sort—Ferguson did not describe the technique he utilized to prepare the drawing which employed generally accepted standards in the relevant technical community. *Daubert*, 509 U.S. at 593–94. Apart from Plaintiffs' argument in their opposition, Ferguson included no explanation of what the drawing is meant to represent, and no explanation of what the dates on the document are supposed to represent. While the attorney states that the drawing shows "the limit of failure on seven (7) separate survey dates," Ferguson did not represent this. Ferguson did not explain whether his purported survey was based on measurements taken during site visits, photographs, interviews with the Plaintiffs, guesses based on Google maps, or something else altogether. The drawing does not encompass any articulated opinions that can be discerned without an accompanying explanation, which he failed to provide. Based upon the deficient disclosure, the Court is unable to determine about what Ferguson will testify and what facts and data he considered, and thus cannot evaluate Ferguson's potential opinions. Given the complete dearth of information, Ferguson's opinions, whatever they may be, are unreliable under Rule 702.

### 3. Patricia Raper

In their Rule 26(a)(2)(B) disclosures, Plaintiffs identified Patricia Raper, of Stewart Title & Settlement Services, Inc., as an expert witness who would testify about "documents recorded related to the Brewer's Creek subdivision and the Oyster Court subdivision." ECF No. 20, attach. 1 at 1. Raper prepared a Title Report that demonstrated the transfer of title regarding the properties at issue in this lawsuit. *Id.* at 15–20. Following Plaintiffs' initial Rule 26(a)(2)(B) disclosures,

Plaintiffs provided a supplemental disclosure noting that Raper "charged $1,250.00 for her title report," Plaintiffs could not yet confirm the rate for her testimony, and Plaintiffs engaged Raper's company "to perform a title report in their due diligence of investigating their claim." ECF No. 20, attach. 2 at 1.

The County argues that Raper's testimony should be excluded under Rule 26(a)(2)(B) because she failed to provide a statement of all opinions that she will express and the basis and reasons for them, the data she analyzed in forming her opinions, and her qualifications. The County also argues that Raper's testimony should be excluded under Rule 702 because she did not prepare a report containing any expert opinion, there is no indication that her testimony is based on sufficient facts or data, there is no description of the principles and methods used to determine if her testimony is the product of reliable principles and methods, and no evidence that she reliably applied the principles and methods to this case.

In their opposition, Plaintiffs asserted that Raper "is better understood and proffered as a fact witness to the instruments on record." ECF No. 23 at 6. At the hearing, Plaintiffs conceded that Raper should not have been offered as an expert witness, but instead would be called as a fact witness.

The Court concurs that the title report is not, as Plaintiffs intend to use it here, an "expert opinion" that required the disclosure of a full Rule 26(a)(2)(B) report. It appears that Raper merely reviewed records in the courthouse and reported the chain of title of the properties at issue. Under these circumstances and given the nature of Raper's proposed testimony as represented at the hearing, Raper will not be considered an expert and will not be permitted to offer expert opinions at trial. She will be permitted to testify as a fact witness regarding the results of her title search.

4. Nanette Criddle

In their Rule 26(a)(2)(B) disclosures, Plaintiffs identified Nanette Criddle, of Rose & Womble Realty LLC, to testify about "her duty as a real estate salesperson to disclose known defects and sinkhole's negative impact on the marketability of the subject property." ECF No. 20, attach. 1 at 22. Criddle's "report" consists of a one-page letter addressed to Plaintiffs, purportedly "to identify impacts to your properties arising from the dedicated drainage easement encumbrances on your properties which the County refuses to maintain." *Id.* at 22. Criddle's letter offers two opinions: (1) that a licensed relator has an obligation under Virginia Law to disclose "any known material adverse facts" to a buyer of a property; and (2) that "[t]he drainage easement that is not maintained is now an[] open sinkhole and an adverse easement impairing the marketability and salability of [the] properties." *Id.* Following Plaintiffs' initial Rule 26(a)(2)(B) disclosures, Plaintiffs provided a supplemental disclosure stating that Criddle:

> does not maintain a resume. She and her husband worked as family marine transportation business for twenty-eight (28) years before she obtained her realtor's license. Her license is held by her broker, Rose & Womble. Ms. Criddle testified in court once in the last five years. . . . She did not publish anything in the last five years. She is owed $500.00 for her letter opinion and $150.00/hour for her testimony.

*Id.*

The County argues that Criddle's testimony should be excluded under Rule 26(a)(2)(B) because, even after her supplemental disclosure, she did not provide any indication of her educational background or the training she received to procure a relator's license or how long she has been a relator, and she did not provide any information about what facts or data she relied on in forming her opinions. ECF No. 20 at 8–9.

The County also argues that Criddle's testimony should be excluded under Rule 702 because her opinion that relators are legally obligated to disclose a sinkhole on the property

improperly states a legal conclusion and is unhelpful to the jury, and Criddle does not provide any basis for her other opinion, such as indicating that she spoke to potential buyers about the property or conducted a market study to determine the impact of the drainage failure on a potential sale of the property.

Plaintiffs defend Criddle's report and opinions by arguing that her opinion that a realtor is required to disclose known defects "speak[s] for [itself]." ECF No. 23 at 5, 11. Additionally, Plaintiffs argue that this opinion is "not rebutted by Defendant." *Id.* at 10, 11. Plaintiffs contend that they were "not required to cause the realtor to perform a study" to opine that the availability of other properties in the neighborhood meant that the adverse impact of the "ongoing adverse easement and sinkhole" would lower of the value of their property, but instead that Criddle was "entitled to rely on her market experience." *Id.*

   a) *Criddle's report is deficient under Rule 26(a)(2)(B).*

Criddle's letter report disclosed two opinions: (1) Virginia Law requires a realtor to disclose known defects in a property when listing it for sale; and (2) the condition of Plaintiffs' properties will reduce their salability and market price. ECF No. 20, attach. 1 at 22. Setting aside Rule 26(a)(2)(B)'s disclosure requirement with respect to Criddle's first opinion, her report is deficient under the Rule with respect to her second opinion. Criddle failed to identify the facts or data she considered in forming her opinion that the easement and sinkhole reduce the salability of the properties, failed to identify the basis or reason for this opinion, and failed to disclose any information about her qualifications and why she is entitled to offer this opinion other than the fact that she has a relator's license. It is unclear how Criddle knows anything about the property or its condition, as she did not identify the source of her information. Accordingly, Criddle's report is deficient under Rule 26(a)(2)(B).

*b)  Criddle's opinions are unreliable and unhelpful under Rule 702.*

Criddle's opinions are unreliable and unhelpful to the jury for several reasons.  First, Criddle's opinion regarding Virginia Law's requirement that known defects in a property must be disclosed to potential buyers is unhelpful to the extent it states a legal conclusion that relators have a legal obligation to disclose the condition of the property before sale.  To the extent that such a legal conclusion is helpful to the jury, it is the province of the court, not a witness, to inform the jury of the law.  *See Stetter v. Shalala*, 13 F. App'x 79, 83 (4th Cir. 2001).

Second, Criddle's failure to provide an explanation of the basis or reasons for her opinion regarding the obstacles to selling the properties renders her opinion unreliable.  Criddle did not explain how she came to her conclusions, including her conclusion that "[m]arket participants do not like property with adverse easements much less adverse easements with uncertain conditions." ECF No. 20, attach. 1 at 22.  It is unclear how Criddle came to that conclusion; for instance she may know this from her experience as a relator, and if so, she should have disclosed the nature of her experience and how that experience informs her opinion.[3]  She might have conducted a market study, or spoken to prospective buyers, but this information is not provided.  Moreover, because she did not disclose the facts and data she relied on and the basis and reasons for her opinion, the Court is unable to evaluate whether this information is typically relied on by other relators in her field, rendering the opinion unreliable.

Third, Criddle's opinion is unhelpful and unreliable because she appears to conflate the existence of the easement with the sinkhole on the property.  Criddle states that: (1) relators must disclose any known material adverse facts; (2) the *easement* is readily apparent on the properties

---

[3] At the hearing Plaintiffs' counsel represented that Criddle had been a realtor for only a short number of years.

and would be discoverable to relators and surveyors; and (3) "[a]ccordingly, anyone you attempt to sell your property to should become aware of the *sinkhole* encumbering your properties during the process" and by law, she is "required to disclose the existence of the sinkhole." *Id.* (emphasis added). Then, Criddle stated "[t]he drainage easement that is not maintained is now an[] open sinkhole and an adverse easement impairing the marketability and salability of your properties" and "[w]ith the easement open as a sinkhole, your properties stand to face extended exposure time in order to make a sale . . . " *Id.* Simply put, however, this opinion is muddled because the easement is not a sinkhole—the easement is a legal encumbrance and the sinkhole is a physical condition on the property. It is not clear from Criddle's letter whether the material adverse fact is the existence an easement on the property or the existence of the physical sinkhole, and accordingly it is not clear what Criddle opines actually reduces the salability and marketability of the properties.

In light of the defects of Criddle's opinions expressed in her letter report, those opinions are unreliable and unhelpful to the jury under Rule 702.

5. Dennis Gruelle, MAI, SRA

In their Rule 26(a)(2)(B) disclosures, Plaintiffs identified Dennis Gruelle, MAI, SRA, of Appraisal Consultation Group, to testify about "the value of the subject properties before and after the failure to maintain the drainage easement." ECF No. 20, attach. 1 at 2. Gruelle provided two appraisals—one for the Brock property and one for the Fernaays' property. ECF No. 20, attach. 1 at 24–83. Therein, Gruelle concludes that the difference in market value before and after the sinkholes are $75,000 and $190,000 for the Brock and Fernaays' properties, respectively. *Id.* at 24–25, 54–55. Following Plaintiffs' initial Rule 26(a)(2)(B) disclosures, Plaintiffs provided a supplemental disclosure identifying the cases in which Gruelle testified as an expert in the previous four years. ECF No. 20, attach. 2 at 1, 3–4.

The County argues that Gruelle's testimony should be excluded under Rule 26(a)(2)(B) because his supplementation providing the cases in which he has testified as an expert is untimely, he does not state the basis and reasons for his opinions, and he does not provide the facts or data he used to form his opinion. ECF No. 20 at 10–11.

The County also argues that Gruelle's testimony should be excluded under Rule 702 because his opinions do not rest on a reliable foundation, he "double counts" the cost to repair the properties, he does not provide an adequate basis for his conclusions, and his sales comparison approach is flawed. ECF No. 22 at 8–15.

Plaintiffs defend Gruelle's report and opinions by claiming it is no different in approach from an appraisal report proffered by the County. ECF No. 23 at 8–9. They also argue that as an expert Gruelle is permitted to rely on hearsay and otherwise inadmissible evidence as a basis for his opinion. *Id.* at 9.

    *a)  Gruelle's report complies with Rule 26(a)(2)(B).*

Unlike Plaintiffs' four other witnesses, Gruelle submitted a comprehensive report, stating his opinions and the reasons for those opinions, the facts and data he considered (*see* ECF No. 20, attach. 1 at 43, 74 ("[t]he appraiser further reviewed the title work and subdivision plat of the easement recorded in this case, as well as other documents provided by the County)), potential exhibits he will use, a list of his qualifications, and his compensation. *See* ECF No. 20, attach. 1 at 24–83. By their supplemental disclosure Plaintiffs also identified Gruelle's prior testimony. The Court does not find that the late disclosure of this information caused any material prejudice to the County, as the supplemental disclosure was provided only one week and a day after

Plaintiffs' first Rule 26(a)(2)(B) disclosure.   Accordingly, Gruelle's report complies with the disclosure requirements under Rule 26(a)(2)(B).[4]

    *b)   Gruelle's opinions are not reliable under Rule 702.*

However, despite meeting the disclosure requirements of Rule 26(a)(2)(B) in some respects, Gruelle's opinions are unreliable and unhelpful to the jury under Rule 702 because they rest on an improper foundation.  First, Gruelle's opinions about the cost to cure the conditions on the property do not rest on a reliable foundation.  As pointed out by the County, in the "analysis of drainage easement and failure to maintain" section of Gruelle's report, Gruelle notes:

> [t]he cost to permit and repair the property affected by the sinkhole is estimated at $139,262 by the County for a *similar* drainage improvement failure in the same subdivision. Lewis Construction bid the cost of construction and repair of this drainage easement and bid the costs to be $71,866.95 using 21" pipe instead of 24" pipe and still approaches the County estimate of $79,761.60 for construction costs.

ECF No. 20, attach. 1 at 43, 75.  However, Gruelle does not explain *why* the condition and costs to repair this sinkhole and drainage easement would be similar—he simply states that they are. He fails to explain what he did to arrive at this conclusion, i.e., what information he considered, what analysis he performed or reviewed that others performed, to lead him to conclude that the cost of the projects were comparable.  In effect, he relies on his own ipse dixit.  "Without testing, supporting literature in the pertinent field, peer reviewed publications or *some basis to assess the level of reliability*, expert opinion testimony can easily, but improperly, devolve into nothing more than proclaiming an opinion is true 'because I say so.'"  *Small v. WellDyne, Inc.*, 927 F.3d 169, 177 (4th Cir. 2019) (emphasis added).

---

[4] Fulfilling the requirements of Rule 26(a)(2)(B) by stating the opinion and the reason or basis therefore and providing the facts and data claiming to support it does not, however, mean that the opinion is reliable under Rule 702, if the facts and data upon which the opinion is based are not reasonably relied on, if the reasons given for the opinion are not product of reliable principles and methods, or if the expert has not reliably applied the principles and methods to the facts of the case. Fed. R. Evid. 702; *see also United States v. Wilson*, 484 F.3d 267, 274–75 (4th Cir. 2007).

Second, Gruelle's opinions rest on an unreliable foundation because they rely on a number of people who were not designated to testify in this litigation, or whose testimony the Court has already found unreliable under Rule 702. In his appraisal for the Fernaays' property, Gruelle states that he consulted with "David Baisley of Stokes Environmental who inspected the sinkhole and advise[d] [ Gruelle] of the permitting, surveying, and design requirements to perform bank stabilization and dredging to remove the sediment displaced into the Fernaays' boat slip." ECF No. 20, attach. 1 at 74. Gruelle states that Baisley "confirmed that the Fernaays would need to delineate, design, and permit the bank stabilization and dredging work required to repair the ongoing failure and restore the Fernaays' boat slip to its condition before the drainage improvement failed."[5] *Id.* at 75. Gruelle further states that "Nathan Iseman of Iseman Marine Construction confirmed that four feet is the minimum required for motor boat and recreation boating access. Iseman likewise confirmed that the cost to dredge the Fernaays' riparian zone, not including design and permitting, is at lest $30,000." *Id.* Problematically, Baisley and Iseman have not been identified as experts in this case, and the Court has no way of knowing their qualifications, expertise, and whether they relied on sufficient facts and data in evaluating the Fernaays' property and any purported need for dredging. The Court cannot determine whether Baisley and Iseman's conclusions are reliable, and thus whether Gruelle's opinions—which rest on those conclusions—are reliable. "Even though an expert witness may base his opinion on underlying information, it does not follow that the otherwise inadmissible information may come into evidence just because it has been used by the expert in reaching his opinion." *United States v. Tran Trong Cuong*, 18 F.3d 1132, 1143–44 (4th Cir. 1994). Here, Gruelle adopts as the

---

[5] As far is the Court is aware, no witness has attempted to identify the boat slip's condition "before the drainage improvement failed," which would have informed an opinion regarding the need for and extent of any remediation made necessary due to the "failed improvement."

foundation of his opinion the expert opinions of those whose own opinions cannot be tested. This he may not do. *Id.*

Gruelle also adopts and relies on Criddle's opinion letter, and states that the disclosure of the sinkhole "will cause lower negotiations or buyers to walk away." *Id.* at 43–44, 75–76. However, this opinion letter, too, may not be relied upon by Gruelle. Generally, although federal Rule of Evidence 703 permits an expert to rely on evidence that need not be admissible, that is only true if the evidence is of a type reasonably relied on by experts in the field in forming an opinion. Reports such as Criddle's "specifically prepared for purposes of litigation are not, by definition, 'of a type reasonably relied upon by experts in the particular field.'" *Tran Trong Cuong,* 18 F.3d at 1143. In any event, the Court has found, *supra,* that Criddle's opinion is unreliable and unhelpful under Rule 702, and therefore does not provide a reasonable basis for Gruelle's opinion.

Third, Gruelle's sales comparison analysis is irrelevant and unreliable because he compares the Plaintiffs' properties with properties that do not have a sinkhole or failing easement. *See* ECF No. 20, attach. 1 at 36–42, 66–74. In *Mt. Valley Pipeline, LLC v. 9.89 Acres of Land,* the Western District of Virginia considered an appraisal report by Gruelle who appraised a property encumbered by a pipeline using a comparable sales approach. No. 7:19-CV-145, 2021 WL 4398032, at *4 (W.D. Va. Sept. 27, 2021). There, the court found Gruelle's opinions to be unreliable because two of the three comparable sales he used did not provide the values of the properties encumbered by a pipeline easement, rendering Gruelle's testimony that the pipeline encumbrance impacted the sales price unreliable. *Id.,* at *4. Here, Gruelle used three sales to compare with the Brock property, and four sales to compare with the Fernaays' property. ECF No. 20, attach. 1 at 40–42, 71–73. While these properties are in a similar area as the subject properties and comparable in size and amenities, none of those sales have any easements or

21

sinkholes on the property. Under these circumstances, Gruelle "can only speculate" that the easement "impacted the sales price." *9.89 Acres of Land*, 2021 WL 4398032, at *4. Thus, their comparison to the properties at issue in this lawsuit is irrelevant, and Gruelle's opinion is based on insufficient data and unreliable.

In sum, Gruelle's opinions are unreliable under Rule 702 because they do not rest on a proper foundation of sufficient facts and data.

## C.

The County has offered alternative bases for excluding the five experts' opinions—as a sanction under Federal Rule of Civil Procedure 37(c) for failing to disclose information as required by Rule 26(a)(2)(B), or pursuant to the Court's role as gatekeeper under Rule 702. Were the Court to consider exclusion as a Rule 37(c) sanction based on Plaintiffs' failure to fully disclose that which was required to be disclosed pursuant to Rule 26(a)(2)(B), the Court would need to consider whether Plaintiffs' nondisclosure was substantially justified or harmless.

> In exercising its broad discretion to determine whether a nondisclosure of evidence is substantially justified or harmless for purposes of a Rule 37(c)(1) exclusion analysis, a district court should be guided by the following factors: (1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the non-disclosing party's explanation for its failure to disclose the evidence.

*Wilkins v. Montgomery*, 751 F.3d 214, 222 (4th Cir. 2014) (quoting *Southern States Rack & Fixture, Inc. v. Sherwin-Williams Co.*, 318 F.3d 592, 596–97 (4th Cir. 2003)). Conceivably, the Court could permit Plaintiffs to supplement, again, their disclosures to rectify the problems the Court has outlined here. As part of its analysis of the *Southern States* factors, the Court would have to determine the extent to which the County could cure the surprise undoubtedly created by all new expert reports. At the hearing the Court discussed with the parties the extent to which the

Court might mitigate the prejudice to the County because of Plaintiffs' nondisclosure. The County argued that it has undergone considerable expense to try to obtain Plaintiffs' compliance with Rule 26(a)(2)(B), and would have to undertake significant additional expense to respond to any new expert reports.

Ultimately, however, the Court has determined that Rule 702, rather than Rule 37(c), is the proper vehicle to address the deficiencies of Plaintiffs' experts. Fundamentally, the greatest problem with the expert opinions is that they are unreliable under Rule 702 and *Daubert*. In its role as gatekeeper, the Court has an "indispensable" obligation to "ensure that an expert's testimony both rests on a *reliable* foundation and is *relevant* to the task at hand." *Sardis*, 10 F.4th at 281. In fulfilling that obligation, the Court has found that these expert reports are unreliable for various reasons.

Moreover, several factors militate against providing Plaintiffs' further opportunity to remedy these deficiencies. First, Plaintiffs' expert disclosures were due October 7, 2021, and despite being advised by the County why their disclosures were inadequate, Plaintiffs' provided only the barest of supplementation a week later. Second, that supplementation was plainly incomplete, as Plaintiffs failed to remedy even obvious shortcomings, such as Claud's qualifications and prior testimony, any substantive information regarding the opinions and facts and data considered by Ferguson, and Criddle's qualifications beyond stating she is a licensed realtor. In the six months since this information was required to be disclosed, Plaintiffs never attempted to rectify these shortcomings, let alone submit amended reports that actually discussed the full opinions and reasons therefore and the facts and data relied on by the witnesses. Instead, Plaintiffs adopted the posture that Rule 26(a)(2)(B) and Rule 702 were merely technicalities and the County was entitled to no further elaboration. Permitting Plaintiffs now to provide new reports

23

that comply with both Rule 26(a)(2)(B) and Rule 702, at this late stage in the litigation and after the time for disclosure has long since expired, would reward Plaintiffs for their intransigence and disregard of the rules that govern all litigation in the federal courts.

Accordingly, the County's Motion to Exclude Plaintiffs' Experts Pursuant to Federal Rule of Evidence 702, ECF No. 21, is **GRANTED**, and designated expert witnesses John T. Claud, III, John S. Ferguson, Nanette Criddle and Dennis Gruelle are excluded from testifying at trial. Patricia Raper may testify only as a fact witness. In light of this ruling, the County's Motion to Strike Plaintiffs' Expert Witness Disclosure and Exclude Expert Testimony Pursuant to Federal Rules of Civil Procedure 16(f), 26(a)(2)(B), and 37, ECF No. 19, is **MOOT**.

The Clerk is **DIRECTED** to forward this Order to all counsel of record.

It is so **ORDERED**.

Lawrence R. Leonard
United States Magistrate Judge

Norfolk, Virginia
March 23, 2022

24